### STRETCH v. STRETCH.

1. EVIDENCE — HANDWRITING — QUALIFICATION OF WITNESS — LOST NOTE—ESTATES OF DECEDENTS.

   Where the administrator of a father's estate brought suit against a son on a lost note, the making of which was denied by defendant, it was not improper to allow a witness, who claimed to have seen the note, to testify to defendant's signature and indorsement on the note, where he testified that he had read a great many letters written by defendant and was able to identify his handwriting.

2. SAME—CROSS-EXAMINATION—ESTATES OF DECEDENTS.

   Where the note was claimed to bear even date with a deed from the father to defendant, which deed recited that $3,500 was the purchase price, and $2,000 was the son's share of the father's estate, it was not improper, on cross-examination of defendant, to attempt to show that the balance above the $2,000 was an indebtedness for which the note was probably given; it was not objectionable on the ground that it tended to show an indebtedness distinct from the note.

3. TRIAL—BILLS AND NOTES—BURDEN OF PROOF—ESTATES OF DECEDENTS—PAYMENT—SETTLEMENT.

   Where the defendant claimed a settlement with the heirs,

instruction by the court that, if the jury found the note and indorsements had been made as claimed, the burden of showing payment was on defendant, was not erroneous, although the language of the court might have been more applicable to the matter of settlement than it was.

4. LIMITATION OF ACTIONS — INDORSEMENTS — INFERENCES — PAYMENT.

An actual payment on a note, so as to bar the running of the statute of limitations, may be inferred from proof of an indorsement in the handwriting of the maker; the provisions of section 12335, 3 Comp. Laws 1915, relating only to indorsements made by or on behalf of the party to whom the payment shall be made.

5. APPEAL AND ERROR—COMPROMISE VERDICT.

Where the plaintiff was entitled to a judgment for the full amount of principal and interest, and the jury returned a verdict for the principal only, the defendant cannot object that the verdict is too small, if it actually expresses the judgment of the jurors.

6. TRIAL—COMPROMISE VERDICT.

A compromise verdict should be set aside, not because it is too large or too small, but because it does not express the real judgment of the jurors.

7. SAME.

And where there was evidence that the payee had the income for a considerable time from defendant's farm, which was to be applied upon the indebtedness, and which the jury might have applied against the interest, it was not so clearly a compromise verdict as to warrant the court in setting it aside.

Error to Cass; Des Voignes, J. Submitted January 4, 1916. (Docket No. 4.) Decided June 1 1916.

Assumpsit by William H. Stretch, as administrator of the estate of John Stretch, deceased, against Isaac Stretch upon a promissory note. Judgment for plaintiff. Defendant brings error. Affirmed.

*E. Bruce Laing* and *Wilber N. Burns,* for appellant.

*Hendryx & Mosier,* for appellee.

This is an action of assumpsit brought by plaintiff, as administrator of the estate of John Stretch, his father, against the defendant, who is also a son of John Stretch. The purpose of the action is to recover the amount alleged to be due and unpaid upon a promissory note which the plaintiff claims was given by the defendant to the father on June 5, 1879, for $600, with interest at 6 per cent. The note was not produced at the trial, and is claimed to have been lost or destroyed. John Stretch, the father, died in April, 1892, and no proceedings were had in the probate court until April, 1910, when the plaintiff was appointed administrator of his estate. This action was brought in April, 1912, and within two years after the granting of letters of administration. Both William Stretch, the plaintiff, and Ira Stretch, another brother, testified on the trial that they made an examination of their father's papers in August after his death, and that among the papers they found the note in question. They claim, also, that Ira, at the time, made a memoranda of the note, showing the date, amount, and rate of interest, together with an indorsement on the back reading as follows: "Credit on note $50.00, November 5, 1890." Both the plaintiff and Ira testified that the note was in the handwriting of their father, but that the indorsement thereon, as well as the signature thereto, was in the handwriting of their brother, the defendant. When the administrator was appointed the note could not be found. The defendant denies that he ever made such a note, and denies that his father held any note of any kind against him at the time of his death. This, of course, includes a denial of both the signature and the indorsement. A computation was made and testified to, showing that the interest upon the note would amount to $1,199.91, which, with the principal of $550, would make a total of $1,749.91 at the time of the trial. The jury rendered a verdict in favor of the plaintiff

for $550, and the defendant brings the case to this court by writ of error.

PERSON, J. (*after stating the facts*). There are a number of assignments of error in the record, and they will be considered in the order in which they are argued in the brief for defendant.

1. It is claimed that William Stretch, the plaintiff, should not have been permitted to testify that the signature to the alleged note, and the indorsement thereon, were in the handwriting of the defendant, inasmuch as it was apparent, the defendant says, from William's testimony, that he did not have sufficient knowledge of defendant's handwriting to qualify him as a witness in that behalf. But, as was held in *Vinton v. Peck*, 14 Mich. 287:

"Any one who has had the proper facilities, and who can swear to a knowledge of the handwriting in question, has always been admitted."

And, while it might be drawn from the examination of the witness in chief that he was not very familiar with the handwriting of the defendant, yet he seems to have cleared this up somewhat on cross-examination, where he swears definitely that he had read a great many letters written by him and was able to identify his handwriting. We cannot say that his testimony was improperly admitted. It may also be remarked that Ira Stretch testified positively that the signature to the note, and the indorsement thereon, were both in the handwriting of the defendant; and Ira's qualifications to testify to the handwriting were not questioned.

2. It will be remembered that the alleged note to the father, John Stretch, upon which this action is brought, is claimed by the plaintiff and Ira Stretch to have borne date June 5, 1879. A deed from the father to the defendant, bearing the same date, and conveying 80 acres

of land, was placed in evidence. This deed, which was also signed by the mother, recited a consideration of $3,500, and contained the following clause:

"Two thousand dollars ($2,000.00) of the above consideration is understood to be as a portion of Isaac J. Stretch's share of the estate of the parties of the first part at and after their decease."

On the cross-examination of defendant by counsel for the plaintiff, various questions were asked him in an attempt to show that the balance of the purchase price above the $2,000 was considered at the time as an indebtedness from the defendant to his father. These questions were objected to by counsel for the defendant upon the ground that they tended to show an indebtedness distinct from that manifested by the note. We understand that the questions were asked for the purpose of showing, not another indebtedness, but a contemporaneous indebtedness, for which the note might have been, and probably was, given. For this purpose we think the questions were competent.

3. The court, in charging the jury, used, at one place, the following language:

"Now, gentlemen, if you find such a note was given as the plaintiff claims, and the indorsements made thereon as claimed by the plaintiff, if those two first propositions you resolve in favor of the plaintiff, then the burden of showing payment of this note is on the defendant to satisfy you by a preponderance of the evidence of that fact, payment of the note, if you find it was in existence and was a legal obligation as against him. Payment is always a matter of defense and must be shown, as, for instance, if the note was here and the indorsements were on the back of it as claimed by the plaintiff, the plaintiff might rest his case after showing and producing that note and the indorsements, and then he would have made under the law what is known as a *prima facie* case; and then it would devolve upon the defendant to show that payment has been made, or some other defense that he might put in."

Complaint is made that these instructions tended to confuse the jury by a question of payment, when, in fact, no payment was claimed. But these instructions were given with relation to a request made by counsel for defendant regarding a settlement of the estate by the heirs before proceedings were taken in the probate court, and, while the language of the court regarding payment was not as applicable to the matter of settlement as some other language might have been, yet the burden of proof in showing such settlement was as much upon defendant as proof of payment would have been. Indeed, the cancellation of the note by a settlement would have been in the nature of payment. We do not see how the defendant could have been injured by these instructions. It is also claimed by counsel for the defendant that the court was in error in telling the jury that plaintiff made out a *prima facie* case by proving the existence of the note, the signature to it, and the indorsement thereon in defendant's handwriting. This brings us to defendant's fourth contention.

4. Defendant insists that, even if there was such a note as is claimed, it can be relieved of the bar of the statute of limitations only by proof of actual part payment, and that proof of the indorsement alone was not enough. Defendant is correct in his idea that it is the part payment, and not the indorsement, that takes the case out of the statute. But it must be remembered that proof of an indorsement in the handwriting of the defendant himself is proof from which an actual payment may be inferred. *Chandler* v. *Lawrence,* 3 Mich. 261; *Blanchard* v. *Blanchard,* 122 Mass. 558 (23 Am. Rep. 397) ; *Wheeler* v. *Robinson,* 50 N. H. 303; *Noble* v. *Edes,* 51 Me. 34; 25 Cyc. p. 1378. The statute (3 Comp. Laws, § 9744; 5 How. Stat. [2d Ed.] § 14151 [3 Comp. Laws 1915, § 12335]) relates only to indorsements made by or on behalf of the party

to whom the payment shall be made, and not to the party making the payment. If the existence of the note was established to the satisfaction of the jury, then an indorsement thereon in the handwriting of defendant, if they believed it was in his handwriting, was *prima facie* evidence of actual payment sufficient to prevent the operation of the statute of limitations.

5. It must be conceded, as a matter of law, that the plaintiff was entitled to a judgment for the full amount of principal and interest, if for anything; that is, to a judgment for $1,749.91. The jury, however, awarded a judgment for only $550, the amount of the principal. This, the defendant claims, clearly shows that it was a compromise verdict. If it was a compromise verdict, it ought undoubtedly to be set aside. The wrong, however, in such a verdict, rests in the fact that it does not express the real judgment of the jurors, and not alone that it is too large or too small. A defendant cannot object that a verdict is too small if it is actually the expression of the judgment of the jurors. Nor will a court set aside a verdict as being the result of a compromise unless it clearly appears that it actually was such a result, and that does not necessarily appear in this case. Here evidence was given on behalf of defendant himself tending to show that the father had the income of the whole or of a portion of defendant's farm for a considerable period of time, and with the understanding that such income should be applied upon defendant's indebtedness to the father. It is true that the value of the use of the farm was not shown, and that there was really no data from which the jury were authorized to make an allowance as against the note; but, if they did make such an allowance as the honest expression of their judgment, the result was not a compromise. It was the opinion of the circuit judge that the jury applied what they believed to be a fair allowance for the use of the

farm in cancellation of the interest upon the note. The probability that the verdict should be thus accounted for is so great that we do not feel authorized to set it aside as growing out of a compromise.

No sufficient error having been pointed out, the judgment is affirmed.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred.